IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Z-Man Fishing Products, Inc.; Holding One, Inc., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:11-cv-428-RMG-JDA |
| v. | ) ) ) | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Joseph F. Renosky; Renosky Lures, Inc., | ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court for claim construction pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), and on Plaintiffs' motion for partial summary judgment [Doc. 34]. Pursuant to the provisions of Title 28, United States Code, Section 636 and Local Rule 73.02(C)(7), D.S.C., this magistrate judge is authorized to construe the disputed claim term, consider the motion for partial summary judgment, and submit findings and recommendations to the District Court.

## BACKGROUND

Plaintiff Z-Man Fishing Products, Inc. ("Z-Man"), is a privately held fishing tackle company based in Ladson, South Carolina. [Doc. 34-3 ¶ 3.] Z-Man is a directly owned subsidiary of Plaintiff Holding One, Inc. ("Holding One"). [*Id.* ¶ 4.] Holding One is the owner by purchase and assignment of all right, title, and interest in U.S. Patent No. 7,726,062 ("the '062 Patent"), entitled "Snag-Resistant Fishing Lure," practiced by the CHATTERBAIT®, a line of fishing lures commercialized by Z-Man. [*Id.* ¶ 5.] Z-Man is the exclusive licensee of the rights associated with the '062 Patent. [Doc. 7-2 ¶ 7.]

Defendant Joseph F. Renosky ("Renosky") is the owner and operator of Defendant Renosky Lure, Inc. ("Renosky Lure"). [Doc. 21-1 ¶ 2.] Renosky has been in the fishing lure business for many years. [*Id.* ¶ 3.] Until December 2010, Defendants acted as the sole distributors of the CHATTERBAIT® brand lures to several retailers. [Doc. 7-2 ¶ 18; Doc. 21-1 ¶ 26.] However, Z-Man terminated the distributorship, effective at the end of December 2010. [Doc. 7-2 ¶ 18.]

On February 22, 2011, Plaintiffs filed this action, alleging claims of (1) patent infringement, (2) trade dress infringement, (3) interference with prospective advantage, (4) unfair competition, (5) breach of contract, and (6) conversion. [Doc. 1.] Plaintiffs also requested a declaratory judgment that U.S. Patent No. D579,512, owned by Renosky, is invalid and/or unenforceable. [*Id.*] On April 19, 2011, Defendants filed their Answer and asserted counterclaims against Plaintiffs, including declaration of non-infringement of the '062 Patent and declaration of invalidity of the '062 Patent. [Doc. 18 at 9–12.]

On March 31, 2011, Plaintiffs filed a motion for a temporary restraining order and expedited hearing. [Doc. 7.] On May 10, 2011, after a hearing on the motion, the Court issued a Report and Recommendation recommending Plaintiffs' motion be construed as a motion for a preliminary injunction and that the motion be denied for Plaintiffs' failure to demonstrate irreparable harm. [Doc. 28.] In the Report and Recommendation, the Court found Plaintiffs were likely to succeed on their patent infringment claim because, construing the term "fixed within" on the record before the Court at that time, the claim term "fixed within" meant "to make firm, stable, or stationary in or into the interior" and was not limited to being construed as "immovable." [*Id.* at 11–13.] The District Court adopted the Report and Recommendation on May 17, 2011. [Doc. 30.]

**Claim Construction Contentions**

The parties agree the only term requiring construction is "fixed within," which is found in Claim 1.[1]  [Doc. 32.]  Plaintiffs contend the Court has already properly construed "fixed within" to mean "to make firm, stable, or stationary in or into the interior."  [*Id.* at 1–2; Doc. 37 at 1, 4–5.]  Specifically, Plaintiffs argue neither the claim language nor the functionality of the device suggest a meaning other than the plain and ordinary meaning of the words "fixed within"; nothing in the specification of the '062 Patent suggests a more restrictive meaning; the '062 Patent's figures fail to suggest a more restrictive meaning; the prosecution history does not support Defendants' construction; and, in light of U.S. Patent No. 7,627,978 ("the '978 Patent"),[2] "fixed within" cannot mean "immovable relative to said jig body."  [Doc. 37 at 4–5; Doc. 39.]

Conversely, Defendants contend the ordinary meaning of "fixed" is "stationary, not moveable, set," such that "fixed within" means "immovable."  [Doc. 32 at 2–3; *see* Doc. 38 at 4–8.]  Defendants argue the '062 Patent's specification, claims, and prosecution history support their construction; in particular, Defendants argue the '062 Patent's figures place the wire loop at the same fixed location on the lure body, and the limitation that the blade move in a limited side-to-side motion would be defeated if the wire loop was not immovable.  [Doc. 38 at 4–8.]  At a hearing before the Court on March 29, 2012,

---

[1] Plaintiffs also contend that the word "loon" that appears in Claim 1 is an obvious typographical error and should be construed as "loop."  [Doc. 32 at 2; Doc. 37 at 2, 5–6.]  Defendants have failed to address Plaintiffs' argument as to the word "loon," and therefore, the Court recommends this term in Claim 1 be construed as "loop."

[2] The '062 Patent was a continuation from the '978 Patent.  [*See, e.g.*, Doc. 39 at 4.]  As with the '062 Patent, Holding One is the owner by purchase and assignment of all right, title, and interest in the '978 Patent. [Doc. 7-2 ¶ 6.]

Defendants also argued the U.S. Patent and Trademark Office ("PTO") has found the inventions disclosed in the '978 Patent and the '062 Patent were not patentably distinguishable, which is confirmed by the terminal disclaimer subsequently filed by Plaintiffs, and therefore, Plaintiffs cannot rely on their argument that the "fixed within" limitation in the '062 Patent is necessarily different from the "immovable" limitation in '978 Patent.

**Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs contend Defendants have infringed Claims 1, 2, 7, 8, and 10 of the '062 Patent by making, using, selling, offering for sale, and/or importing fishing lures marketed under the names "J-Will's Rocker" and "Rockerhead" (collectively, "the Defendants' lures"). [Doc. 34-1 at 1, 4–7.] Plaintiffs also contend they are entitled to summary judgment on Defendants' claim of invalidity because Defendants failed to identify a basis for asserting the '062 Patent is invalid. [*Id.* at 2, 7.]

Defendants contend that, in early 2010, Renosky designed a fishing lure that has a number of advantages over the lure described in the '062 Patent. [Doc. 21-1 ¶¶ 23–24.] Defendants argue this lure does not infringe the '062 Patent because it does not contain every limitation of the allegedly infringed claim. [Doc. 40 at 1, 5–11.] Further, at the March 29, 2012 hearing before the Court, Defendants acknowledged they no longer contend the '062 Patent is invalid.[3]

---

[3] Accordingly, the Court recommends summary judgment be granted in favor of Plaintiffs as to Defendants' claim of invalidity.

**Claim Construction**

Before it can determine whether the defendant is infringing the patent at issue or the patent is invalid, a court must construe the claims at issue, giving the claims the same meaning for purposes of both the infringement and validity analyses.[5] *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Only when a claim is properly understood can a determination be made whether the claim 'reads on' an accused device or method, or whether the prior art anticipates and/or renders obvious the claimed invention. . . . Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses."). Claim construction is a question of law and involves determining what the language of the claim means. *Markman*, 52 F.3d at 976, 979. Courts generally use three sources to determine the meaning of the claim terms: the claims themselves, the specification, and the prosecution history—these sources are the intrinsic evidence of a claim's meaning. *Markman*, 52 F.3d at 979 (quoting *Unique Concepts, Inc. v. Brown*, 939

---

[4] "The Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of [its] sister circuits to non-patent issues." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (citing *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999). Summary judgment is such a procedural issue not affecting substantive patent law. *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1351–52 (Fed. Cir. 2008). Therefore, in construing the disputed claim term, the Court will apply the law of the United States Court of Appeals for the Federal Circuit as outlined below, and in determining whether Plaintiffs are entitled to partial summary judgment, this Court will apply the law of the United States Court of Appeals for the Fourth Circuit, which is outlined below.

[5] Claim construction is an important step in the court's analysis because "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *see also* 35 U.S.C. § 112 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."); *Markman*, 52 F.3d at 980 ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims.").

F.2d 1558, 1561 (Fed. Cir. 1991)).  A court may also consider extrinsic evidence, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles, but "[o]nly if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996); *see also Markman*, 52 F.3d at 980 (stating that extrinsic evidence may be useful to explain scientific principles, technical terms, terms of art, and the state of the prior art at the time of the invention).

### Intrinsic Evidence

The starting point for claim construction is the claim itself.  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).  Claim terms should usually be given their ordinary and customary meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention," where "at the time of the invention" is usually the effective filing date of the patent application. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

Further, the claim must be read and interpreted in light of the specification; "specifications and claims must harmonize.  That is, we may and should turn to the specifications to see what the claims really mean, and the one should not be contradictory of the other."  *Acme Card Sys. Co. v. Remington-Rand Bus. Serv.*, 3 F. Supp. 254, 255 (D. Md. 1933).  Moreover, as the Court of Federal Claims noted,

> The United States Court of Appeals for the Federal Circuit has recognized two circumstances where the specification is of particular importance.  The first is where the specification includes a "special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess."  Specifically, "'a patentee can act as his

6

own lexicographer to specifically define terms of a claim contrary to their ordinary meaning'[;] the written description in such a case must clearly redefine a claim term 'so as to put a reasonable competitor or one reasonably skilled in the art on notice that the patentee intended to so redefine that claim term.'"

The second is where the specification "may reveal an internal disclaimer, or disavowal, of claim scope by the inventor." The import of these decisions is that the inventor's intent with respect to the claims "must be clear" to overcome their customary meaning.

*USHIP Intellectual Props., LLC v. United States*, 98 Fed. Cl. 396, 406–07 (2011) (alteration in original) (internal citations omitted). "However, in looking to the specification to construe claim terms, care must be taken to avoid reading 'limitations appearing in the specification . . . into [the] claims.'" *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989)); *see also Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims."). "[T]here is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). To locate that fine line, courts must look "to the specification to ascertain the meaning of the claim term as it is used by the inventor in the context of the entirety of his invention." *Id.* at 1187.

Moreover, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope

narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582–83). "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) (citing *Unique Concepts*, 939 F.2d at 1562; *Senmed, Inc. v. Richard-Allan Med. Indus., Inc.*, 888 F.2d 815, 818–20 (Fed. Cir. 1989); *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988)). A patentee is precluded "from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent." *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1577–78 (Fed. Cir. 1997) (citing *Zenith Lab., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1424 (Fed. Cir. 1994)).

Thus, there are three instances where a court should construe a claim term to be narrower than the ordinary and customary meaning of the words:

> (1) If a patent specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such case, the inventor's definition will govern. However, there is a heavy presumption in favor of the ordinary meaning unless the patentee clearly has set forth an explicit definition for a claim term.

> (2) If the patent specification reveals an intentional disclaimer, or disavowal, of a claim scope by the inventor. This intention must be clear and cannot draw limitations from a preferred embodiment.

> (3) If a patentee has made a clear and unmistakable disavowal of scope during the prosecution of the patent. Such a disavowal is known as the doctrine of prosecution disclaimer.

*TDM Am., LLC v. United States*, 85 Fed. Cl. 774, 789 (2009) (internal citations omitted).

### Extrinsic Evidence

The intrinsic evidence should usually be sufficient to enable one to determine the meaning of a claim term. *See Markman*, 52 F.3d at 986 (citing the disclosure requirements of 35 U.S.C. § 112, the court noted that "ideally there should be no 'ambiguity' in claim language to one of ordinary skill in the art that would require resort to evidence outside the specification and prosecution history"). However, when needed and in its discretion, a court may consider extrinsic evidence to determine the meaning of the language employed in the patent. *Id.* at 980 (quoting *Seymour v. Osborne*, 78 U.S. (11 Wall.) 516, 546 (1871)); *see also Vitronics*, 90 F.3d at 1583 (stating that, when the intrinsic evidence is unambiguous, it is improper for the court to rely on extrinsic evidence for purposes of claim construction). "While extrinsic evidence may be useful in shedding light on the relevant art, it is less significant than the intrinsic record in determining the 'legally operative meaning of disputed claim language.'"[6] *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1251 (D. Kan. 2009) (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).

---

[6] The rationale for this rule is that

> [t]he claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely. In other words, competitors are entitled to review the public record, apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention. Allowing the public record to be altered or changed by extrinsic evidence . . . , such as expert testimony, would make this right meaningless. The same holds true whether it is the patentee or the alleged infringer who seeks to alter the scope of the claims.

*Vitronics*, 90 F.3d at 1583 (internal quotations and citations omitted).

Dictionaries, which are a form of extrinsic evidence, hold a special place and may sometimes be considered along with the intrinsic evidence. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1459 (Fed. Cir. 1998); *Vitronics*, 90 F.3d at 1584 n.6 (stating that, although technically extrinsic evidence, the court is free to consult dictionaries at any time to help determine the meaning of claim terms, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents"). Accordingly, a court may utilize extrinsic evidence such as dictionary definitions to determine a claim's meaning as long as the extrinsic evidence does not contradict the patent documents.

**Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Claim Construction**

As previously stated, the only term requiring construction is "fixed within," which is contained in Claim 1, the only independent claim of the '062 Patent.  Plaintiffs contend "fixed within" is properly construed as "to make firm, stable, or stationary in or into the interior."  Defendants argue "fixed within" is properly construed as "immovable."

### *Claim Language*

First, the Court looks to the claim language to determine the meaning of "fixed within."  Claim 1 reads as follows:

> 1. A fishing lure, comprising:
>
> (a) a body having a forward portion, a rearward portion, and a longitudinal axis, the forward portion defining a width;
>
> (b) a wire loop **fixed within** and extending from the forward portion of the body;
>
> (c) a hook attached to and extending rearwardly from the body along the longitudinal axis of the body, the hook having a hook end spaced apart from the rearward portion of the body; and
>
> (d) a blade member, the blade member
>
>> (i) having a first edge located proximate to the wire loop and
>>
>> (ii) defining therethrough a mounting hole in proximity to the first edge, through which mounting hole a portion of the wire loop is positioned, and

(iii) further defining therethrough a pair of line attachment holes, to which pair of line attachment holes a fishing line is attached;

whereby, as the lure is pulled through the water, a majority of the blade member is oriented above the body and the blade member moves in a side-to-side motion relative to the body, the side-to-side motion being defined either by the first edge of the blade member striking a first side of the body and striking a second side of the body opposite the first side or by the first edge of the blade member striking another portion of the wire loop that is opposite the portion of the wire loop positioned through the mounting hole.

U.S. Patent No. 7,726,062 col. 6 ll. 30–58 (filed Apr. 16, 2007) (emphasis added).

Upon review, nothing in the claim language indicates the proper construction of "fixed within." Defendants contend

Plaintiffs' construction of the term "fixed within" to not mean "immovable" would void the limitation of the blade member being limited to the side-to-side motion relative to the body. One skilled in the art would understand the relationship between the movement of the blade member with the movement of the wire loop. As the degree of movement of the eyelet or loop increases, the greater the blade member's range of motion. Plaintiffs' argument that "fixed within" means not immovable or stable is an attempt to expand not only the range of motion of the wire loop but also the resulting range of motion of the blade member, which is clearly contrary to the claim limitations.

[Doc. 38 at 6.] For this proposition, Defendants refer to the following language of Claim 1:

[A]s the lure is pulled through the water, a majority of the blade member is oriented above the body and the blade member moves in a side-to-side motion relative to the body, the side-to-side motion being defined either by the first edge of the blade member striking a first side of the body and striking a second side of the body opposite the first side or by the first edge of the blade member striking another portion of the wire

13

> loop that is opposite the portion of the wire loop positioned through the mounting hole.

U.S. Patent No. 7,726,062 col. 6 ll. 49–58. Although Defendants argue this claim language describing the range of motion of the blade indicates the wire loop is immovable, the Court disagrees. The claim language expresses that, when the lure is pulled through the water, the blade member will first strike one side of the body and then strike either another side of the body or the wire loop. *Id.* Defendants have failed to demonstrate, and the Court has failed to appreciate, how a movable wire loop would broaden or fail to meet this limitation.[7] Thus, the Court concludes the claim language provides no guidance as to the proper construction of "fixed within."

### Patent Specification

Second, the Court considers the specification. The wire loop in the '062 Patent is denoted as the eyelet in Figure 1, *id.* fig. 1, item 24, and (1) is described as "extending from the jig body," *id.* col. 3, l. 42; (2) preferably extends from a front area of the jig body, *id.* col. 3, ll. 45–46; (3) comprises a wire loop, *id.* col. 3, l. 47; and (4) generally is coplanar to the hook end, *id.* col. 3, ll. 48–49. Nothing in the specification specifically defines "fixed within" as used in Claim 1. The Court also notes nothing in the specification limits the eyelet to being immovable, and at the hearing before the Court, Defendants conceded nothing in the specification limits the eyelet to being immovable.

---

[7] It seems the sides of the body define the range of motion of the blade, which would be the case whether the wire loop was movable or immovable—either way, the blade cannot move side-to-side more than the body of the lure allows.

### *Prosecution History*

#### *Prosecution Disclaimer*

Next, the Court looks to the prosecution history to discern the meaning of "fixed within" as used in Claim 1. A patent's prosecution history may inform claim construction by "eliminating from consideration meanings disclaimed or disavowed during the prosecution." *Judin v. United States*, 27 Fed. Cl. 759, 775 (1993) (citing *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 867 F.2d 1572, 1574 (Fed. Cir. 1989); *ZMI Corp.*, 844 F.2d at 1580). Known as prosecution disclaimer, this doctrine "is well established in Supreme Court precedent, precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). However, the doctrine applies only when a patentee has unequivocally disavowed a certain meaning to obtain the patent. *Id.* at 1324–25 (collecting cases where prosecution disclaimer was not applied because "the alleged disavowal of claim scope [wa]s ambiguous" and cases where "the doctrine of prosecution disclaimer attache[d] and narrow[ed] the ordinary meaning of the claim congruent with the scope of the surrender"). Thus, "arguments made during prosecution shed light on what the applicant meant by its various terms." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1438 (Fed. Cir. 1988).[8]

---

[8] Similarly, "[p]rosecution history estoppel acts as one check on application of the doctrine of equivalents by precluding a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent." *Wang Labs.*, 103 F.3d at 1577–78 (citing *Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285, 291 (Fed. Cir. 1995); *Zenith Lab.*, 19 F.3d at 1424); *see also du Pont*, 849 F.2d at 1438 (stating that prosecution history estoppel "is applied as a limitation upon the doctrine of equivalents after the claims have been properly interpreted" (citation omitted)). Because the Court is not considering the application of the doctrine of equivalents, the doctrine of prosecution history estoppel does not apply to the Court's analysis.

In the portion of their claim construction brief addressing prosecution history, Defendants focus on Plaintiffs' arguments to the PTO[9] with respect to prior art cited by the patent examiner in an Office action dated April 29, 2009. [Doc. 38 at 6–8.] Defendants contend that in distinguishing Thomas, U.S. Patent No. 2,291,422 ("Thomas"), Plaintiffs added the "fixed within" limitation to overcome a fishing lure with a blade that has a significant range of motion. [*Id.* at 6–7.] Defendants also generally argue Plaintiffs' representations during the prosecution of the '062 Patent require the Court to construe "fixed within" to mean "immovable." [*See* Doc. 32 at 2 (identifying pages where Plaintiffs discussed the term "fixed within" in Plaintiffs' response to the Office action discussed above).] Plaintiffs contend "[t]he argument advanced by [Plaintiffs] during prosecution was that the side-to-side movement of the blade was limited; no argument, and no disclaimer, was made that the overall movement of the blade be limited to side-to-side movement." [Doc. 39 at 3 (emphasis omitted).] Plaintiffs also argue this distinction is apparent in view of prior art including Thomas, which utilizes a split ring to attach the blade to the body, where the split ring passes through a hole in the blade and a hole in the body. [*Id.*; *see also* U.S. Patent No. 2,291,422 fig. 8 (illustrating how the blade of Thomas's lure is attached to the lure body).[10]]

Upon review, the Court finds the prosecution history of the '062 Patent fails to support Defendants' position that, in distinguishing Thomas, Plaintiffs unequivocally disavowed a meaning of "fixed within" that is broader than "immovable." In the relevant

---

[9] For convenience, the Court will refer to Plaintiffs as the applicants for the '062 Patent and, thus, will refer to the arguments made to the PTO during prosecution of the application as having been made by Plaintiffs.

[10] U.S. Patent No. 2,291,422 is part of the record before the Court as Docket Entry 39-1.

Office action, the patent examiner rejected several claims as being anticipated by Thomas, including the claim that eventually issued as Claim 1 of the '062 Patent:[11]

> Thomas discloses a jig having a body (4), a wire loop (5), and a hook (1) extending from the rear end of the body (21); a blade member (8) having a first edge . . . located proximate to the wire loop (5) and defining a mounting hole (13) through which the wire loop (5) is positioned, . . . and a pair of line attachment holes . . . to which a fishing line is attached . . . ; wherein as the lure is pulled through the water, a majority of the blade member is oriented above the body . . . and the blade member moves in a side-to-side motion relative to the body, the side-to-side motion being defined by the first edge of the blade member striking one of the wire loop and the body as

---

[11] At the time the examiner issued this Office action, the claim that became Claim 1 read as follows:

A fishing lure comprising:

(a) a jig, the jig comprising

(i) a weighted body having a forward end and a rearward end, the forward end defining a width;

(ii) a wire loop being formed of a wire having a cross-sectional diameter and being carried by the body; and

(iii) a hook extending from the rearward end of the body and

(b) a blade member, the blade member

(i) having a first edge located proximate to the wire loop and

(ii) defining therethrough a mounting hole having a diameter slightly larger than the cross-sectional diameter of the wire loop and through which mounting hole the wire loop is positioned; and

(iii) further defining therethrough a pair of line attachment holes, through which pair of line attachment holes a fishing line is attached;

whereby, as the lure is pulled through the water, a majority of the blade member is oriented above the body and the blade member moves in a side-to-side motion relative to the body, the side-to-side motion being defined by the first edge of the blade member striking one of the wire loop and the body as a first side and striking one of the wire loop and the body as a second side opposite the first side.

[*See* Doc. 38-3 at 2–3; *see also* Doc. 40-3 at 2–3 (duplicate); Doc. 93-1 at 63–64 (duplicate).]

a first side and striking one of the wire loop and the body as a second side opposite the first side . . . .

[Doc. 38-2 at 4–5.[12]] In a response to the examiner dated October 23, 2009, Plaintiffs argued,[13]

THOMAS fails to teach a wire loop fixed within and extending from the forward portion of the body; a pair of line attachment holes through the blade; and a blade member that is attached to the body by a fixed wire loop through the mounting hole and that moves in a limited side-to-side motion, striking one of the wire loop and the body.

THOMAS's blade (8) is connected to his body (4) via a split ring connector (5), which allows a large range of motion of the blade and the body, relative to one another. THOMAS describes the blade as having "a pronounced freedom of movement relative to the lure body" (page 1, right column, lines 42–45). THOMAS's split ring connector fails to satisfy the claim limitation that the wire loop is "fixed within" the body and the claim limitation that a portion of the wire loop is positioned through the mounting hole of the blade.

. . .

The Office also suggests that the THOMAS blade exhibits the side-to-side blade motion claimed by the Applicant. From the description of FIG. 9 (page 2, right column, line 73 – page 3, left column, line 1), THOMAS teaches that the blade, or plate 8, may be located at a position between the full line position and the phantom, or broken, line position. It should be noted that, in three full columns of description about the movement of the plate 8, THOMAS makes absolutely <u>no</u> mention of the blade 8 striking the jig body 4, as asserted by the Office.

---

[12] Some documents are duplicated in the docket. Docket Entry 38-2, the April 29, 2009 Office action, is also found at Docket Entry 94, pages 30–47. Docket Entry 38-3, Plaintiffs' October 23, 2009 response to the Office action, is also found at Docket Entry 40-3 and Docket Entry 93-1, pages 62–106. For simplicity, the Court will cite to only one docket entry.

[13] Plaintiffs also amended the claim that eventually issued at Claim 1 to include the limitation "a wire loop fixed within and extending from the forward portion of the body." [*See* Doc. 38-3 at 2.]

[Doc. 38-3 at 9–10.]  Moreover, in their response to the Office action, Plaintiffs used the terms "fixed" and "fixed within" several times:[14]

- THOMAS fails to teach a wire loop **fixed within** and extending from the forward portion of the body . . . .

  THOMAS's blade (8) is connected to his body (4) via a split ring connector (5), which allows a large range of motion of the blade and the body, relative to one another.  THOMAS describes the blade as having "a pronounced freedom of movement relative to the lure body" (page 1, right column, lines 42–45).  THOMAS's split ring connector fails to satisfy the claim limitation that the wire loop is "**fixed within**" the body and the claim limitation that a portion of the wire loop is positioned through the mounting hole of the blade.  [Doc. 38-3 at 9–10 (emphasis added).]

- The THOMAS reference also conflicts with the secondary references in regard to the blade attachment mechanism.  THOMAS, like PERRICK, teaches a split ring connection, which provides pronounced freedom of movement.  BUDDLE secures his blade using a **fixed** eyelet, while EDWARDS and PFEIFFER each use a pin to secure his blade within a slot in his respective lure body.  The selection of a "wire loop . . . fixed within and extending from the forward portion of the body" is contrary to the teachings of THOMAS, and the Office Action offers no reasoned argument why one skilled in the art would turn from THOMAS's teachings to those of BUDDLE for this particular element.  [*Id.* at 18 (emphasis added).]

- Applicant submits that the suggestion to combine YARVISE with PERRICK is also improper, because their constructions and intended functions are different. . . . YARVISE's blade is secured to a **fixed** eyelet, while PERRICK's blade is attached via a split ring.  [*Id.* at 22 (emphasis added).]

- The limitation that the wire loop is **fixed within** and extends from the body is not taught by EDWARDS or PFEIFFER, as both of these patents teach the placement of their respective blades within a slot in the lure body and the attachment of the blades with a pin.  This limitation, therefore, is not taught by the combination of references. [*Id.* at 30 (emphasis added).]

---

[14] The following is an illustrative, and not an exhaustive, list documenting Plaintiffs' use of "fixed" or "fixed within" in their response to the Office action.

- The limitation that the wire loop is **fixed within** and extends from the forward portion of [the] body is not taught by PERRICK, which teaches a split ring connector 42 between the blade and the body. The BUDDLE reference teaches an eyelet 8, which is "the forward portion of the hook" (page 1, right column, lines 59–62). [*Id.* at 33 (emphasis added).]

- [T]here is no motivation to combine PERRICK with THOMAS (other than hindsight) and no articulated explanation of the reasonable expectation of success, if combined. Moreover, PERRICK's blade is attached to the hook body by a split ring, similar to the blade/body attachment mechanism of THOMAS. Thus, the combination of THOMAS and PERRICK lacks "a wire loop . . . **fixed within** and extending from" the body, wherein a portion of the wire loop is positioned through the mounting hole of the blade. [*Id.* at 36–37 (emphasis added).]

- In addition, the EDWARDS blade is secured within a slot in the lure body by a pin, whereas the PERRICK blade is attached via a split ring. Only YARVISE's blade is attached using a **fixed** eyelet. [*Id.* at 44 (emphasis added).]

Following Plaintiffs' response to the April 29, 2009 Office action, the '062 Patent issued with the amendments Plaintiffs submitted in their response. [*Compare* Doc. 38-3 at 2–5, *with* U.S. Patent No. 7,726,062 col. 6 l. 30–col. 8 l. 13.]

A review of these references provides some insight into the meaning of "fixed" as used in the '062 Patent. For example, Plaintiffs described Buddle's eyelet as fixed [Doc. 38-3 at 18], where Buddle's eyelet is formed from the shank of the hook, U.S. Patent No. 1,418,229 col. 1, ll. 56–62. Plaintiffs also described Yarvise's eyelet as fixed [Doc. 38-3 at 44], where Yarvise's eyelet is screwed into the body of the lure, U.S. Patent No. 1,994,678 col. 1, ll. 37–38 & fig. 2. However, Plaintiffs never unequivocally declared their eyelet is always fixed in the same manner as Buddle and/or Yarvise, and Plaintiffs never unequivocally disavowed a construction of "fixed" as "to make firm, stable or stationary; to

20

affix or attach." In other words, Plaintiffs' use of "fixed," or "fixed within," in their response to the Office action fails to limit the construction of "fixed within" by this Court; the Court is constrained from reading limitations into the claims of the '062 Patent that were not intended by Plaintiffs. *Interactive Gift Exp. Inc.*, 256 F.3d at 1331. Consequently, the Court has found nothing in the prosecution history that triggers the doctrine of prosecution disclaimer with respect to the term "fixed within."

### *Relationship to the '978 Patent*

At the claim construction hearing before the Court, Defendants argued the PTO has found the inventions disclosed in the '978 Patent and the '062 Patent were not patentably distinguishable, which is confirmed by the terminal disclaimer subsequently filed by Plaintiffs, and therefore, Plaintiffs cannot rely on their argument that the "fixed within" limitation in the '062 Patent is necessarily different from the "immovable" limitation in '978 Patent.[15] Plaintiffs argued the '062 Patent application was a continuation of the '978 Patent application, which means the claims of the '062 Patent have a different scope from the claims of the '978 Patent, but the patents have the same disclosure. Plaintiffs further argued terminal disclaimers address nonstatutory obviousness-type double patenting issues, which arise when claims in a later patent application appear to have been obvious in light of an earlier patent or patent application held by the same owner.

---

[15] Defendants also argued at the hearing before the Court that, because the claims of the '062 Patent are not patentably distinct from the claims of the '978 Patent, an interpretation of "fixed within" that is broader than "immovable" would constitute an impermissible addition of new matter. For the reasons stated in this Report and Recommendation, the Court disagrees. *See also Paperless Accounting, Inc. v. Bay Area Rapid Transit Sys.*, 804 F.2d 659, 664 (Fed. Cir. 1986) ("But the mere filing of a continuation-in-part with additional new matter or revised claims is not of itself an admission that the matter is 'new' or that the original application was legally insufficient to support the claims.").

## Terminal Disclaimer

As Plaintiffs argued, a terminal disclaimer addresses nonstatutory obviousness-type double patenting by preventing an undue extension of an earlier patent. *In re Vogel*, 422 F.2d 438, 441–42 (C.C.P.A. 1970); *see also In re Braithwaite*, 379 F.2d 594, 601 (C.C.P.A. 1967) ("Double patenting is a basis of rejection grounded in public policy and primarily intended to prevent prolongation of monopoly."). The patent examiner will make a nonstatutory obviousness-type double patenting rejection "where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s)."[16] MPEP § 804 II.B.1; *see also*

---

[16] In contrast, a statutory double patenting rejection is issued "[w]here the claims of an application are substantively the same as those of a first patent." MPEP § 804 II. These rejections, concerning double patenting of the same invention, "find[] . . . support in the language of 35 U.S.C. 101 which states that 'whoever invents or discovers any new and useful process . . . may obtain a patent therefor . . . .' Thus, the term 'same invention,' in this context, means an invention drawn to identical subject matter." *Id.* (citations omitted). A terminal disclaimer cannot overcome a statutory double patenting rejection. *Id.* § 804 II.A.

Further, a nonstatutory obviousness-type double patenting rejection differs from a rejection under 35 U.S.C. § 103(a) based on prior art as defined in 35 U.S.C. § 102(e). As the Federal Circuit has explained,

> Only the claims are compared in a rejection for double patenting. Such a rejection by the patent office does not mean that the first-filed patent is a prior art reference under § 102 against the later-filed application. *In re Bowers*, 359 F.2d 886, 887, 53 CCPA 1590, 149 USPQ 570, 572 (CCPA 1966). Thus the "obviation" of obvious-type double patenting by filing a terminal disclaimer has no effect on a rejection under § 103 based on the first-filed patent. Such a rejection can not be overcome by a terminal disclaimer. *Bowers*, 359 F.2d at 891 n. 7, 149 USPQ at 575 n. 7. A reference patent that is not of common ownership, or a publication or public use or sale more than one year before the filing date of the later-filed application, can not be removed as prior art by the filing of a terminal disclaimer. *In re Bartfeld*, 925 F.2d 1450, 1453-54, 17 USPQ2d 1885, 1888 (Fed. Cir. 1991); *In re Fong*, 378 F.2d 977, 979-80 n. 1, 54 CCPA 1482, 154 USPQ 25, 27 n. 1 (1967).

*Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 873–74 (Fed. Cir. 1991) (footnote omitted). Thus, "[t]he purpose of a terminal disclaimer is to limit the term of a patent, not to remove a reference as prior art." *Bartfeld*, 925 F.2d at 1453.

*Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 873 (Fed. Cir. 1991) ("A rejection for obvious-type double patenting means that the claims of a later patent application are deemed obvious from the claims of an earlier patent." (citations omitted)). The applicant may then file a terminal disclaimer, which obviates the rejection "[b]y disclaiming that portion of the second patent which would extend beyond the expiration of the first, . . . giv[ing] up any extension of patent protection that might have resulted."[17] *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 940 (Fed. Cir. 1992) (citing *Braithwaite*, 379 F.2d at 601). However, the filing of a terminal disclaimer "raises neither presumption nor estoppel on the merits of the rejection" but "simply serves the statutory function of removing the rejection of double patenting." *Quad Envtl.*, 946 F.2d at 874.

## Claim Differentiation

The doctrine of claim differentiation states "that an interpretation of a claim should be avoided if it would make the claim read like another one." *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 404 (Ct. Cl. 1967). Under this doctrine, "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims." *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987). Moreover, "the doctrine of claim differentiation raises a rebuttable presumption that differences in claims are significant and, therefore, that narrow limitations contained in one claim should not be read into other claims in which there is no such limitation." *Casler v. United States*, 15 Cl. Ct. 717, 731 (1988) (citing *Tandon Corp.*, 831 F.2d at 1023–24; *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed. Cir. 1985)).

---

[17] A terminal disclaimer is available only for patents with a common assignee. *In re Longi*, 759 F.2d 887, 894 (Fed. Cir. 1985) (citing *Bowers*, 359 F.2d 886).

<u>Analysis</u>

In this case, the doctrine of claim differentiation applies because Claim 1 of the '978 Patent uses different words from Claim 1 of the '062 Patent. In relevant part, Claim 1 of the '978 Patent reads, ". . . a mechanism for joining said jig body and said blade together, said mechanism comprising *an eyelet being immovable relative to said jig body* and extending from said jig body . . . ." U.S. Patent No. 7,627,978 col. 6, ll. 42–45 (emphasis added). Claim 1 of the '062 Patent reads, in relevant part, "A fishing lure comprising . . . *a wire loop fixed within* and extending from the forward portion of the body . . . ." U.S. Patent No. 7,726,062 col. 6, ll. 30, 34–35 (emphasis added). Thus, the presumption arises that "a wire loop fixed within . . . the forward portion of the body" is different from "an eyelet being immovable relative to said jig body."

Defendants have attempted to rebut the presumption that these claim terms have different meanings by pointing out that Plaintiffs filed a terminal disclaimer to overcome the patent examiner's rejection of the '062 Patent's application because the application's claims were not patentably distinct from the claims of the '978 Patent. As explained above, the filing of a terminal disclaimer "raises neither presumption nor estoppel on the merits of the rejection" but "simply serves the statutory function of removing the rejection of double patenting." *Quad Envtl.*, 946 F.2d at 874. Thus, the terminal disclaimer in this case operated only to remove the examiner's nonstatutory obviousness-type double patenting rejection, and the filing of the terminal disclaimer has no bearing on whether the relevant portions of Claim 1 of the '978 Patent and Claim 1 of the '062 Patent have the same or a different scope and meaning. Moreover, in addition to filing a terminal disclaimer, Plaintiffs amended their claims and addressed the examiner's other rejections. [*See* Doc. 38-3.]

Thereafter, the '062 Patent issued. Accordingly, the Court finds the terminal disclaimer has no bearing on the construction of the term "fixed within," and, without more, Defendants have failed to rebut the presumption that the relevant portions of Claim 1 of the '978 Patent and Claim 1 of the '062 Patent have a different scope and meaning. As a result, the Court has failed to find a basis to depart from its construction of "fixed within" contained in its Report and Recommendation of May 10, 2011, which was adopted by the District Court on May 17, 2011.[18]

**Partial Summary Judgment**

As previously stated, Plaintiffs contend they are entitled to summary judgment as to infringement because Defendants have infringed Claims 1, 2, 7, 8, and 10 of the '062 Patent by making, using, selling, offering for sale, and/or importing fishing lures marketed under the names "J-Will's Rocker" and "Rockerhead." [Doc. 34-1 at 1, 4–7.] Defendants argue their lures do not infringe the '062 Patent because they do not contain every limitation of the allegedly infringed claim; specifically, Defendants contend their lures do not contain the limitation that the wire loop is "fixed within" the lure body because their wire loop is not immovable. [Doc. 40 at 1, 5–11.] Defendants have failed to advance any other argument as to infringement.

To determine if the defendant is infringing the patent, the court compares the properly construed claims to the allegedly infringing device. *Cybor*, 138 F.3d at 1454. To be infringing, the defendant's device must contain every limitation, or an equivalent limitation, of the allegedly infringed claims, *see Warner-Jenkinson Co. v. Hilton Davis*

---

[18] As previously stated, the Court found "fixed within" means "to make firm, stable, or stationary in or into the interior" and is not limited to being construed as "immovable." [Doc. 28 at 11–13.]

*Chem. Co.*, 520 U.S. 17, 29 (1997), which is a question of fact, *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

As explained above, the Court concludes "fixed within" is not limited to the construction "immovable." Instead, "fixed within" means "to make firm, stable, or stationary in or into the interior." Defendants do not dispute that their lures contain the "fixed within" limitation if their construction is not adopted [*see* Doc. 40]; Defendants acknowledge that their wire loop is fastened within the lure body by a pin [*id.* at 4]. Because Defendants do not dispute that their wire loop is "fixed within" if that term is construed to be broader than "immovable," the Court has construed the term to be broader than "immovable," and Defendants have raised no other argument to contest infringement of the '062 Patent, the Court finds there is no genuine issue of material fact remaining as to infringement. Accordingly, the Court recommends Plaintiff's motion for partial summary judgment be granted.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the term "fixed within" of Claim 1 of the '062 Patent be construed as stated in the Court's previous Report and Recommendation—as "to make firm, stable, or stationary in or into the interior." The Court further recommends Plaintiffs' motion for partial summary judgment be GRANTED and summary judgment be entered in Plaintiffs' favor as to infringement and validity of the '062 Patent.


IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 27, 2012
Greenville, South Carolina